UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RAJANI CHITTURI,

               Plaintiff,

                     -against-

KINGOLD JEWELRY, INC., ZHIHONG JIA, and
BIN LIU,

               Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-2886-LDH-SJB

**BULSARA, United States Magistrate Judge:**

This case, *Chitturi v. Kingold Jewelry, Inc.* ("*Kingold I*"), filed on June 20, 2020, is a putative class action on behalf of investors who purchased or otherwise obtained publicly traded securities in Kingold Jewelry, Inc. between March 15, 2018 and June 28, 2020 ("the Class Period"). (Compl. dated June 30, 2020 ("*Kingold I* Compl."), Dkt. No. 1 ¶ 1). The Complaint alleges violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. (*Id.* ¶¶ 2, 37–45, 47–50). A second putative class action, *Tysor v. Kingold Jewelry, Inc.* ("*Kingold II*"), with the same class period and alleging the same causes of action, was filed on July 8, 2020. (Compl. dated July 8, 2020 ("*Kingold II* Compl."), No. 20-CV-3050, Dkt. No. 1, ¶¶ 1–2, 37–45, 47–50).

On August 31, 2020, Movant John Murphy ("Murphy") filed a motion (1) to consolidate *Kingold I* and *Kingold II*, (2) for appointment as Lead Plaintiff, and (3) for appointment of The Rosen Law Firm, P.A. as Class Counsel. (Notice of Mot. and Mot. of John Murphy to: (1) Consolidate Related Actions; (2) Appoint Lead Pl.; and (3) Approve

Lead Pl.'s Selection of Counsel dated Aug. 31, 2020 ("Mot."), Dkt. No. 6).  Abdus Samad ("Samad") also filed a motion to consolidate and for appointment as Lead Plaintiff, (Notice of Mot. of Abdus Samad for Consolidation, Appointment as Lead Pl., and Approval of Lead Counsel dated Aug. 31, 2020 ("Samad's Mot."), Dkt. No. 8), but subsequently filed a notice of non-opposition to Murphy's motion, (Notice of Non-Opp'n of Abdus Samad to Competing Mot. for Consolidation, Appointment as Lead Pl., and Approval of Lead Counsel dated Sept. 14, 2020 ("Notice of Non-Opp'n"), Dkt. No. 12). Thus, Murphy's motion is now unopposed.

For the reasons stated below, Murphy's motion to consolidate, for appointment as Lead Plaintiff, and for appointment of the Rosen Law Firm as Class Counsel is hereby granted.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Defendant Kingold Jewelry, Inc. ("Kingold") is a corporation incorporated in Delaware and has its principal place of business in Wuhan, People's Republic of China. (*Kingold I* Compl. ¶ 7; *Kingold II* Compl. ¶ 7).  It professes to "design, manufacture, and sell 24-karat gold jewelry and Chinese ornaments." (*Kingold I* Compl. ¶ 7; *Kingold II* Compl. ¶ 7).  Defendant Zhihong Jia ("Jia") served as Kingold's Chief Executive Officer throughout the Class Period and Defendant Bin Liu ("Liu") served as Kingold's Chief Financial Officer from April 2010 to June 1, 2020; both were involved in the operations and management of the company, including making the false or misleading statements alleged in the Complaint and described below.  (*Kingold I* Compl. ¶¶ 8–11; *Kingold II* Compl. ¶¶ 8–11).

According to the respective Complaints, on March 15, 2018, in Kingold's public 2017 10-K, it claimed it had used its gold inventory as collateral for loans from banks

2

and other financial institutions.  (*Kingold I* Compl. ¶¶ 15–16; *Kingold II* Compl. ¶¶ 15–16).  Similar representations were made in the 10-K for the year ending December 31, 2018.  (*Kingold I* Compl. ¶¶ 18–22; *Kingold II* Compl. ¶¶ 18–22).  Defendants, however,

> failed to disclose that (1) Kingold used fake gold as collateral to fraudulently secure loans; (2) consequently, [Kingold] would face creditor lawsuits and be delisted from the Shanghai Gold Exchange; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis[.]

(*Kingold I* Compl. ¶ 23; *Kingold II* Compl. ¶ 23).  On June 29, 2020, *Caixin Global* published an article that exposed how Kingold had been using 83 tons of gilded copper—not authentic gold—as collateral, was facing numerous lawsuits, and had been delisted from the Shanghai Gold Exchange.  (*Kingold I* Compl. ¶ 24; *Kingold II* Compl. ¶ 24).  As a result, on June 29, 2020, Kingold's stock price fell $0.27—24% of its overall price—to $0.85.  (*Kingold I* Compl. ¶ 25; *Kingold II* Compl. ¶ 25).

The Complaints in *Kingold I* and *Kingold II* assert the same causes of action, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a)), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, against the same defendants, Kingold, Jia, and Liu.  (*Compare Kingold I* Compl. ¶¶ 2, 37–45, 47–50, *with Kingold II* Compl. ¶¶ 2, 37–45, 47–50).  The class periods are also the same.  (*Kingold I* Compl. ¶ 1; *Kingold II* Compl. ¶ 1).

On August 31, 2020, two class members, Murphy and Samad, filed motions in *Kingold I* (1) to consolidate *Kingold I* and *Kingold II*, (2) for appointment as Lead Plaintiff, and (3) for appointment of class counsel.  (Mot.; Samad's Mot.).  Samad subsequently filed a notice of non-opposition to Murphy's motion.  (Notice of Non-Opp'n).  On November 20, 2020, the Court directed Murphy to file proof of service of its motion on the *Kingold II* Plaintiff, (Order dated Nov. 20, 2020), which Murphy did,

(Certificate of Service dated Nov. 27, 2020, Dkt. No. 24).  The Court directed the *Kingold II* Plaintiff or any party wishing to file a motion for appointment as lead plaintiff or to file a notice of non-opposition to do so by December 14, 2020.  (Order dated Nov. 30, 2020, No. 20-CV-3050).  No such motions or notices were filed.  Therefore, Murphy's motion is unopposed.

DISCUSSION

I.      Consolidation of Cases

"Consolidation is 'a valuable and important tool of judicial administration' that should be 'invoked to expedite trial and eliminate unnecessary repetition and confusion.'"  *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)).  Under Federal Rule of Civil Procedure 42, a court may consolidate multiple actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a)(2).  Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports," *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (quotation omitted), and "the actions need not be identical to allow for consolidation," *Reitan*, 68 F. Supp. 3d at 394; *Pinkowitz v. Elan Corp.*, No. 02-CV-4948, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) ("Neither Rule 42 nor the [Private Securities Litigation Reform Act ("PSLRA")] demands that actions be identical before they may be consolidated." (quotation omitted)).  In fact, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."  *Kaplan v. Gelfond*,

4

240 F.R.D. 88, 91 (S.D.N.Y. 2007) (entering consolidation order despite different class periods). Such "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *In re Olsen Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293–94 (E.D.N.Y. 1998) (consolidating cases with different, but overlapping, class periods).

The *Kingold I* and *Kingold II* actions contain nearly identical assertions of law and fact. Both claim violations of section 10(b) of the Securities Exchange Act and Rule 10b-5 by all Defendants and violations of section 20(a) of the Securities Exchange Act by Defendants Jia and Liu. (*Compare Kingold I* Compl. ¶¶ 2, 37–45, 47–50, *with Kingold II* Compl. ¶¶ 2, 37–45, 47–50). They also seek the same relief: class action certification; damages in favor of class members; attorney's fees, and costs and expenses. (*Kingold I* Compl. at 19; *Kingold II* Compl. at 18–19). Moreover, the allegations are based on the same underlying facts; in fact, the Complaints are nearly identical. (*Compare generally Kingold I* Compl., *with Kingold II* Compl.). And the respective class periods are the same. (*Compare Kingold I* Compl. ¶ 1, *with Kingold II* Compl. ¶ 1). Therefore, case consolidation is appropriate. *Schulman v. Lumenis, Ltd.*, No. 02-CV-1989, 2003 WL 21415287, at *1–2 (S.D.N.Y. June 18, 2003) (consolidating cases with complaints "arising out of the same facts and alleging similar, if not identical, claims" and finding "[s]ince every Complaint in the Lumenis Actions is premised on the same facts and statutory provisions, consolidation is appropriate").

II.    Lead Plaintiff

"In consolidated securities litigations, the PSLRA recommends courts to make the decision regarding the appointment of the 'most adequate' plaintiff as the lead plaintiff for the consolidated actions '[a]s soon as practicable after [the consolidation]

decision is rendered.'" *Constance Sczesny Tr.*, 223 F.R.D. at 322 (alterations in original) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)).

A.    Notice to Class

The PSLRA requires a plaintiff who files a complaint to publish, in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period" and permits "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]"  15 U.S.C. § 78u-4(a)(3)(A)(i).  Although no party has objected to the adequacy of the notice here, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) (quotation omitted).

Counsel for Murphy published notice of the class action lawsuit on June 30, 2020 in *Business Wire*.  (Notice of Class Action dated June 30, 2020 ("Notice"), attached as Ex. 1 to Mem. of Law in Supp. of Mot. dated Aug. 31, 2020 ("Mem. in Supp."), Dkt. No. 7).  The Class Period[1] was defined therein, and potential class members were instructed how to join the action and the deadline by which to file a motion for appointment as Lead Plaintiff, August 31, 2020, which was 60 days[2] from the notice's publishing.  (*Id.*).

---

[1] This is the same Class Period as defined in the Complaints.  (*Id.*; *Kingold I* Compl. ¶ 1; *Kingold II* Compl. ¶ 1).

[2] Since the 60th day from the notice's publishing fell on Saturday, August 29, 2020, the period continued to run until the following Monday, August 31, 2020.  Fed. R. Civ. P. 6(a)(1)(C).

"*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published[.]" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (describing *Business Wire* as "a widely-circulated, national, business-orientated news reporting wire service").

Notice to the Class is thus sufficient. Further, Murphy's motion was filed on August 31, 2020, within the period provided by the notice, and therefore is timely. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420, 2020 WL 5548856, at *4 & n.3 (S.D.N.Y. Sept. 16, 2020).

B.      Appointment of Lead Plaintiff

The PSLRA requires the court to appoint as "lead plaintiff" the member of the class that it determines to be the "most adequate plaintiff," *i.e., the member "most capable of adequately representing the interests of class members."* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). The court must "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that:" (1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s); (2) "in the determination of the court, has the largest financial interest in the relief sought by the class; and" (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof that the presumptively adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff. *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-6130, 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) ("Although the [proposed lead plaintiff's] motion is unopposed, the Court must still ensure that it is the most adequate plaintiff under the PSLRA." (citing *Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017))); *e.g., City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314–16 (E.D.N.Y. 2018); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *2–3 (E.D.N.Y. Apr. 26, 2006).

As noted, Murphy made a timely motion for appointment as Lead Plaintiff. The Court therefore turns to the two remaining elements of the presumption of adequacy.

1. <u>Largest Financial Interest</u>

In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider the following:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (quoting *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010)) (referring to these factors as the "*Olsten* factors" and citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 295). "The fourth factor, the approximate losses suffered, is considered to be the most important." *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d

416, 420 (E.D.N.Y. 2018); *accord City of Warren Police*, 325 F. Supp. 3d at 315;

*Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Murphy claims he suffered losses totaling $74,916.46 from his purchases of Kingold securities. (Mem. in Supp. at 5; Kingold Jewelry, Inc. Loss Chart ("Loss Chart"), attached as Ex. 3 to Mem. in Supp., Dkt. No. 7). For each transaction, the Loss Chart lists (1) the date of the transaction, (2) the number of shares purchased or sold, (3) the price per share, and (4) the total cost to buy or revenue from selling the shares. (Loss Chart). During the Class Period, Murphy purchased 31,083.17 shares of Kingold in two accounts, costing $91,028.79.[3] (*Id.*) Murphy retained all of these shares during the Class Period. (*Id.*) Thus, the net shares purchased during the Class Period is 31,083.17, and the net funds expended is $91,028.79. (*Id.*) Murphy suffered $78,906.35 in losses (the purchase cost of $91,028.79 less $12,122.44: 31,083.17 shares times $0.39, the 90-day average price per share from June 29, 2020 to September 26,

---

[3] According to Murphy, the "[t]ransactions [were] adjusted to account for October 21, 2019 1:6 Reverse Stock Split." (PSLRA Certification dated Aug. 31, 2020 ("Certification"), attached as Ex. 2 to Mem. in Supp., Dkt. No. 7).

2020, inclusive).[4] *See Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27 (E.D.N.Y. 2019) ("Sanders suffered $108,918.92 in losses, calculated by subtracting $151,931.58 (6,505 shares times $23.3561, the 90-day average price per share from November 28, 2018 to February 8, 2019) from their original purchase cost of $260,850.50." (footnote omitted)).

Samad, in his notice of non-opposition, recognizes that he does not have the largest financial interest in the litigation. (Notice of Non-Opp'n at 2 ("Having reviewed the competing motions before the Court, Samad does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA.")). He has not disputed Murphy's calculations.

---

[4] The average price per share was calculated using the closing price on each day and is not weighted based on volume of shares traded. Murphy provides a lookback price of $0.49 per share, but his motion was filed less than 90 days after the end of the class period, and as such, the Court uses a lookback price of $0.39 per share, obtained by averaging the closing price per share for the 90 days "beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(I); *see In re Puda Coal Sec. Inc. et al. Litig.*, No. 11-CV-2598, 2017 WL 65325, at *15 (S.D.N.Y. Jan. 6, 2017) ("Under the PSLRA, damages are not calculated based upon a single-day decline in price, but instead are given a 90-day opportunity to recover after the misrepresentations or omissions are corrected." (citing *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38–39 (2d Cir. 2012))), *report and recommendation adopted*, 2017 WL 511834 (Feb. 8, 2017); *see Kingold Jewelry, Inc. (KGJI) Historical Data*, YAHOO FIN., https://finance.yahoo.com/quote/KGJI/history (use date range June 29, 2020 to Sept. 26, 2020) (last visited Nov. 19, 2020). The Court's calculated loss also differs from Murphy's losses; he subtracted the money recouped from the actual sale of 30,956 shares, which occurred after the end of the Class Period and on the two days following the release of the *Caixin Global* article, from the purchase price. (*See* Loss Chart). But if the sale of securities occurred after the end of the class period, courts consider the average price per share of the securities during the 90 days following the disclosure to calculate the damages suffered, rather than the losses from the sale directly following the disclosure in question. *See In re Puda*, 2017 WL 65325, at *15 ("The legislative history of the PSLRA indicates that the purpose of the 90-day lookback is to prevent an overestimation of plaintiffs' damages by looking at the price only on the day following the corrective disclosure.").

Thus, under the *Olsten* criteria, Murphy has the largest financial interest.  *See, e.g.*, *Springer*, 2017 WL 838197, at *1–2 ("Though Tran and Ybarra's motion is now unopposed, the Court nevertheless addresses the requirements under the [PLSRA.] . . . Tran and Ybarra represent that they purchased a total of 39,004 shares during the class period; that they purchased 27,032 net shares (subtracting the total sold from the total purchased); that they expended $98,586.28 in net funds; and that they lost $97,775.32. The other plaintiffs, in withdrawing their respective motions, acknowledged that their financial interest was not as great.  No additional plaintiff has come forward suggesting she has a greater financial interest in this litigation." (citations omitted)).

    2.    <u>Rule 23</u>

The next step in identifying which plaintiff is entitled to the presumption of adequacy is to "ensure that the person (or persons) with the largest financial interest 'otherwise satisfies the requirements of Rule 23.'"  *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).  In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements—typicality and adequacy—are satisfied.  *See Ford v. Voxx Int'l Corp.*, No. 14-CV-4183, 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (adopting report and recommendation) (collecting cases); *see also Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied." (quotations omitted)).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability."  *In re*

*Symbol Techs.*, 2006 WL 1120619, at \*3 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).  There is no dispute that Murphy's claims arise out of the same alleged gold fraud and subsequent delisting of Kingold as the other class members and that they will all make similar legal arguments (under the various provisions of the Exchange Act and Rule 10b-5 thereunder).  Murphy's claims are therefore typical of class members.

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff 'will fairly and adequately protect the interests of the class.'"  *Constance Sczesny Tr.*, 223 F.R.D. at 324 (quoting Fed. R. Civ. P. 23(a)).  In analyzing the adequacy requirement in the context of appointing lead plaintiff, courts consider:

> (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.

*Id.* (quotations and citations omitted); *see also In re Symbol Techs.*, 2006 WL 1120619, at \*3 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).

The proposed Class Counsel is The Rosen Law Firm, P.A ("Rosen Law").  (Mot. at 2).  Rosen Law has acted as lead or co-lead counsel in several securities class actions cases in federal court, including in this District.  (The Rosen Law Firm P.A. Biography dated Aug. 31, 2020 ("Biography"), attached as Ex. 4 to Mem. in Supp., Dkt. No. 7 at 8–49).  The Court concludes Rosen Law would generally be able to conduct this litigation.  *See, e.g.*, *In re Symbol Techs.*, 2006 WL 1120619, at \*3 ("The Pension Fund's counsel . . . has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively.").  Further,

> [n]othing about [Murphy's] interests appears to be antagonistic to the interests of the other class members; this appears to be a fairly common class action based on alleged violations of the Exchange Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value that occurred after a specific statement or omission took place.

*In re Sequans Commc'ns*, 289 F. Supp. 3d at 423. And finally, Murphy's significant financial stake in the outcome of this case underscores that he will prosecute the case with vigor. *See, e.g.*, *In re Gentiva*, 281 F.R.D. at 121 ("[T]here is no evidence that LACERS' interest would in any way conflict with those of other class members. They have a significant financial stake in the outcome of this litigation[,] and this will motivate their vigorous pursuit of recovery for all other class members. Finally, LACERS has retained competent counsel . . . to assist them in zealously pursuing the claims of all class members.").

Therefore, Murphy is entitled to the presumption of adequacy.

3.      Rebuttal of Presumption of Adequacy

The presumption "may be rebutted only upon proof" that Murphy "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *accord Constance Sczesny Tr.*, 223 F.R.D. at 323. No party has raised any arguments to rebut the presumption or suggested that Murphy is subject to unique defenses. (*See* Notice of Non-Opp'n of Movant John Murphy to: (1) Consolidate Related Actions; (2) Appoint Lead Pl.; (3) and Approve Lead Pl.'s Selection of Lead Counsel dated Oct. 9, 2020, Dkt. No. 19). Murphy is thus appointed lead plaintiff. *See, e.g.*, *In re Gentiva*, 281 F.R.D. at 121 ("[B]ecause there is no indication that LACERS is subject to unique defenses or will be unable to fairly and adequately protect the interests

of the class, th[e] presumption is not rebutted.  Therefore, the motion by LACERS to be appointed lead plaintiff is granted." (citations omitted)).

C.    Appointment of Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v); *see In re Sequans Commc'ns*, 289 F. Supp. 3d at 426.  "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice of counsel if necessary to protect the interests of the class."  *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) (quotations omitted); *see Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quotation omitted)).

"When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience."  *Reitan*, 68 F. Supp. 3d at 401 (collecting cases).  Rosen Law represents Murphy and, as discussed above, has served as lead counsel in this and other districts.  (Biography at 8–49).  The Court sees no reason that Rosen Law should not act as Class Counsel in this action.  *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 401 ("Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995.  Faruqi & Faruqi achieved successful outcomes in many of these cases.  The Court finds that Faruqi & Faruqi has the requisite experience necessary to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action." (citations omitted)).

CONCLUSION

Pursuant to Federal Rule of Civil Procedure 42(a), *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, and *Tysor v. Kingold Jewelry, Inc.*, 20-CV-3050, are hereby consolidated as *In re Kingold Jewelry, Inc. Securities Litigation.* All relevant documents and submissions shall be maintained as one file under Master File No. 20-CV-2886. Any other securities class actions filed in, or transferred to, this District related to the facts alleged in the cases described above shall be consolidated into this action.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Court appoints John Murphy as Lead Plaintiff and The Rosen Law Firm P.A. as Class Counsel. Abdus Samad's motion is denied as moot in light of his notice of non-opposition.

SO ORDERED.

*/s/ Sanket J. Bulsara* December 22, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York